67 F.3d 310
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Eugene Davis WASHINGTON, Defendant-Appellant.
 No. 93-50786.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 11, 1995.
Decided Oct. 4, 1995.
 
 Before: BROWNING, NORRIS, and REINHARDT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Eugene Davis Washington was convicted of conspiracy to obstruct justice, obstruction of justice, and bribery of a juror. He challenges his conviction on the ground that he was denied effective assistance of counsel as the result of his trial counsel's failure to object to the introduction of evidence regarding his prior bad acts. We reject Washington's ineffective assistance claim and affirm his conviction. We also reject Washington's arguments that the district court erred in imposing a two-level enhancement for perjury under U.S.S.G. Sec. 3C1.1 and that the court erred in imposing a $750,000 fine under U.S.S.G. Sec. 5E1.2.[1]
 
 I. Ineffective Assistance
 
 3
 Because the circumstances surrounding Washington's ineffective assistance claim are well-documented in the record, we may resolve this claim on direct appeal. See United States v. Molina, 934 F.2d 1440, 1446 (9th Cir.1991). To prevail, Washington must show that (1) the errors by his counsel were so serious that the "representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 687-88 (1984), and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 
 
 4
 Even assuming that trial counsel's performance fell below the range of professionally competent assistance, Washington has failed to demonstrate prejudice. The Supreme Court has stated that "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. at 693. Furthermore, evidence admitted due to counsel's error is not prejudicial if that evidence would have been admissible under an alternative theory. Molina, 934 F.2d at 1447. In this case, the evidence of Washington's two prior convictions for counterfeiting checks and wire transfer fraud would have been admissible even if Washington's counsel had objected to the government's Rule 404(b) motion. Because Washington testified at trial, his prior convictions for the counterfeit check and the fraudulent wire transfer schemes would have been admissible under Rule 609(a)(2). Even though the circumstances surrounding these convictions would not have been admissible, the district judge's actions reduced the possibility of unfair prejudice. He ultimately restricted the government's introduction of evidence on the counterfeit check scheme following defense counsel's objection.[2]
 
 
 5
 Moreover, there was considerable other evidence of Washington's guilt, making it unlikely that the evidence in question affected the verdict. Ellis and Mumphrey both testified that Washington instructed them to attempt to bribe the juror. Felton Johnson, the juror in the original cocaine trial, testified that he was approached by the defendant's associates and promised a car and a job to vote for acquittal. Finally, Harold Ward, who was involved with the defendant in a separate criminal enterprise, testified that he overheard Washington and Ellis discussing their bribery of the juror. Furthermore, two other jurors in the original cocaine trial testified that Johnson expressed fear for his family and that he became uncomfortable and withdrawn during the course of the trial.
 
 
 6
 Given that evidence of Washington's prior convictions could have been admitted under Rule 609 and that considerable evidence of Washington's guilt was presented, we reject Washington's ineffective assistance claim. Any shortcomings of trial counsel did not prejudice Washington's defense.
 
 II. Perjury Enhancement
 
 7
 Washington also argues that the district court erred in imposing a two-level enhancement for perjury under U.S.S.G. Sec. 3C1.1 ("Obstructing or Impeding the Administration of Justice"). We find no error in the imposition of this enhancement.
 
 
 8
 The government requested an upward adjustment under U.S.S.G. Sec. 3C1.1, on the ground that Washington perjured himself at trial by lying about his involvement in the juror bribery. The application notes to section 3C1.1 include perjury among the conduct that warrants a two-level enhancement. U.S.S.G. Sec. 3C1.1 (n. 2). In United States v. Dunnigan, the Supreme Court addressed the circumstances under which an enhancement for perjury is appropriate. For the enhancement to apply, the defendant must (1) testify falsely (2) concerning a material matter (3) with the intent to provide false testimony. 113 S.Ct. 1111, 1116 (1993). The Court held that "[t]he district court's determination that enhancement is required is sufficient ... if the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury." Id.
 
 
 9
 In this case, the district court made the findings that Dunnigan requires. At Washington's sentencing hearing, the court expressly found that Washington's testimony was false as to a material matter, and that the falsehood was willful and not the result of confusion or faulty memory. For this reason, Washington's reliance on United States v. Rubio-Topete, 999 F.2d 1334 (9th Cir.1993), is misplaced. Although the district court in Rubio-Topete found that the defendant had testified falsely, it did not find that falsehood to be willful or material. Id. at 1341. In contrast, the district court here found not only that Washington had testified falsely, but also that the false testimony was material and willful. These findings are adequate to support a two-level enhancement under U.S.S.G. Sec. 3C1.1.
 
 III. Fine
 
 10
 Finally, Washington argues that the district court erred in imposing a $750,000 fine. We conclude that the district court's finding that Washington could pay this fine was not clearly erroneous.
 
 
 11
 Washington's presentence report contains a finding that Washington had $0 income and assets and a $166,000 debt. The presentence report therefore concluded that Washington "apparently" could not pay a fine. Despite the presentence report's recommendation, the district court imposed a fine of $750,000. At Washington's sentencing hearing, the district judge stated: "I am going to impose a fine on you. I am going to make a finding that irrespective of your statement to the court, I believe that I will impose the maximum fine that can be imposed upon you, which is $750,000."
 
 
 12
 From this statement, it is evident that the district court found Washington able to pay a $750,000 fine. In imposing this fine, the district court apparently relied in part upon a transcript of a phone conversation between Washington and his daughter while Washington was incarcerated at the Federal Correctional Institution (FCI) in Big Spring, Texas in 1992. In this conversation, Washington suggests that he retains control over $2.4-3.8 million in proceeds that he obtained from his fraudulent wire transfer scheme. The defendant's sentencing memorandum itself acknowledges that the proceeds from the wire transfer scheme have never been recovered. It was reasonable for the district court to have concluded, based on the transcript, that Washington still retains control over or knows the whereabouts of the fraudulent proceeds.
 
 
 13
 The evidence adduced at trial provides additional support for the district court's conclusion that Washington still possesses or knows the location of at least $750,000 in wire transfer proceeds. Ellis, who was Washington's associate in the wire transfer scheme, testified that they were successful in obtaining approximately $900,000-$1,200,000 in cash and gold coins from one successful wire transfer. Washington immediately gave Ellis approximately $140,000, but retained control over the remainder. Ellis testified that Washington continued to retain control over the funds thereafter. In light of the FCI transcript and the trial testimony, we conclude that the district court did not clearly err in determining that Washington has the ability to pay a $750,000 fine.
 
 IV. Conclusion
 
 14
 Because Washington was not prejudiced by his trial counsel's failure to object to evidence of prior bad acts, we affirm his conviction. We also affirm the district court's decisions to impose a two-level upward adjustment for perjury and to impose a $750,000 fine.
 
 
 15
 Conviction AFFIRMED; sentence AFFIRMED in part.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Washington also argues that the district court erred in applying Guidelines Sec. 2J1.2(c)(1)'s cross-reference to Sec. 2X3.1. For the reasons stated in a published opinion filed concurrently, we agree and remand for resentencing for the limited purpose of correcting that error
 
 
 [2]
 We also note that the failure to object earlier to the introduction of evidence regarding Washington's prior bad acts appears to have been part of defense counsel's trial strategy. The defendant's opening statement shows that counsel hoped to discredit Ellis' and Mumphrey's testimony about the jury tampering by showing that these witnesses wanted to exact revenge against Washington for implicating them in prior crimes. In addition, Washington's counsel apparently hoped to demonstrate that Ellis and Mumphrey were testifying against Washington in order to extract more favorable terms from the government for their own crimes